## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
## THIRD DIVISION

UNITED STATES OF AMERICA,                                  Criminal No. 06-407 (MJD/AJB)

               Plaintiff,

v.                                              **REPORT AND RECOMMENDATION**

TRAVIS CORRELL,

               Defendants.

    Tracy L. Perzel, Esq., and Timothy C. Rank, Esq., Assistant United States Attorneys, for the Plaintiff, United States of America;

    Peter B. Wold, Esq., and Aaron J. Morrison, Esq., for the Defendant, Travis Correll.

    This matter is before the Court, Magistrate Judge Arthur J. Boylan, on Defendant's Motion to Dismiss the Second Superseding Indictment Based on Vindictive Prosecution [Docket No. 124]. To further support his motion, Defendant moves the Court pursuant to Fed. R. Crim. P. 6(e)(3)(E) to order the disclosure of the grand jury transcript used to obtain the first indictment against Defendant, as well as the evidence presented to the grand jury that formed the basis for the conspiracy charges in the current indictment. The action has been referred to the Magistrate Judge for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c).

    Based upon the file and documents contained therein the Magistrate Judge makes the following:

# FINDINGS

## Background

### 1.  Testimony of Mary Agnew from the September 27, 2007, Suppression Hearing

Mary Agnew is employed as a U.S. Postal Inspector. See Tr. 107 [Docket No. 121]. On May 3, 2007, Agnew was informed by AUSA Rank that Travis Correll was coming to Minnesota to meet with Co-Defendant Neulan Midkiff's attorney. Id. at 109.  AUSA Rank provided Agnew with Correll's cell phone number to call him to see if he would be willing to meet. Id. at 108.  At that time, it was Agnew's understanding that Correll was not represented by counsel. Id. at 109.  Agnew, Rank, and Correll met from roughly 9:00 p.m. until 12:30 a.m. at the Minneapolis Federal Courthouse on the 6th floor in a conference room. Id. at 110.  The purpose of the interview was to discuss with Correll his dealings with Joshua Tree Group, Midkiff, and Horizon Establishment[1]. Id. at 111.

Similar to previous interviews with Mr. Correll, he was free to leave at any time. Id. at 110, 114.  He was never told that he could not leave. Id.  Correll never indicated during the interview that he did not want to speak with Rank and Agnew. Id. at 111.  Rank also advised Correll that if he wanted an attorney present during the interview, that he could wait and talk to them once he retained counsel.[2] Id. at 113.  Correll understood this instruction, nonetheless he wanted to proceed with the

---

[1] Agnew took notes during the interview and prepared a report based on those notes following the interview. Id. at 112.

[2] Appointment of an attorney for Correll in the Georgia criminal case did not occur until after the May 3, 2007, interview. Id. at 114.

interview. Id. According to Agnew, Correll appeared clear-headed and understood the questions he was asked. Id.  There were no representations or promises made to him during the interview about criminal prosecution or potential sentencing. Id. at 113-14.  Correll was not a target of Agnew's investigation at that time. Id. at 112.  Agnew called Correll again on May 8th to inquire about his meeting with Mr. Midkiff's attorney.[3] Id. at 115.  Correll at that point was still neither a subject nor target of a Minnesota investigation. Id. at 121.  Correll was indicted shortly thereafter. See Indictment [Docket No. 1].

**Analysis**

### 1. Motion for Vindictive Prosecution

According to Defendant's interpretation of the law, to establish a *prima facie* case claim of vindictive prosecution, the defendant must demonstrate that others similarly situated to him were not prosecuted and that the decision to enforce the law against him was motivated by discriminatory purpose. See United States v. Armstrong, 517 U.S. 456, 465-66 (1996).  To be entitled to discovery on his claim, he must present some evidence that tends to show the existence of both elements. Id. at 468-69.

Correll claims that his status with the U.S. Attorney's Office was the result of his "confirmation to counsel for co-defendant Midkiff that he...was the mastermind of a national Ponzi scheme and that one of the original persons he duped into investing in his Ponzi scheme was co-defendant Midkiff.  And, that Midkiff did not know the truth about the Ponzi scheme and was not a

---

[3] Agrew took notes during the call and memorialized the notes in a report. Id. at 116.

party to Defendant Correll's fraud."[4]  See Mot. 2-3 [Docket No. 124].  Moreover, Correll alleges that it was only after the government learned that he would provide exculpatory testimony for co-defendant Midkiff that the government indicted him. Id. at 3.  As Correll states, "The decision to enforce the law against Defendant Correll was motivated by discriminatory purpose-to chill his testimony.  His prosecution was selective because it appears that chilling his testimony is the purpose of his indictment." Id.

As the government correctly notes, however, the Armstrong case does not support his claim for vindictive prosecution.  Rather, Armstrong addresses selective prosecution whereby "[u]nder the equal protection component of the Fifth Amendment's Due Process Clause, the decision whether to prosecute may not be based on an arbitrary classification such as race or religion." Armstrong, 517 U.S. at 456-57.  To sustain a claim for vindictive prosecution the Court agrees with the government that the defendant must establish that the prosecution was brought to punish him for exercising a valid legal right. United States v. Leathers, 354 F.3d 955, 961 (8th Cir. 2004).

Correll has failed to provide any evidence supporting a true claim of vindictive prosecution.  The USAO and Agnew in Minnesota were aware that Correll was operating Horizon Establishment as a Ponzi scheme in Atlanta. See Mem. 127 [Docket No. 127]; Tr. at 117.  Most of the background information regarding Correll from earlier interviews with the FBI, SEC, and USAO in Atlanta overlapped the information given by Correll at the May 3, 2007, interview. Tr. at 118.

---

[4] The Court heard similar motions by Co-Defendant Midkiff, alleging impropriety in charging Correll and moving for disclosure of grand jury transcripts. See Mot. [Docket No. 72].  This Court recommended that the motions be denied [Docket No. 81], and the District Court adopted this Court's report and recommendation [Docket No. 90].

However, unlike previous interviews, Correll stated at the May 3rd interview that Midkiff lied to investors regarding he loss of the $1 million West Wing investment (see Second Superseding Indictment ¶ 6; Agnew Report at 3) and lied to Joshua Tree Group Investors when monthly interest payments stopped coming to Joshua Tree from Horizon (see Second Superseding Indictment ¶ 10-11; Agnew Report at 4-5).

In fact, Agnew even testified under oath that Correll provided more details than the other interviews regarding Joshua Tree. See Tr. at 118. The May 3rd interview included areas that had not been discussed or explored in earlier interviews of Correll. Id. at 123. The indictment was not the result of Correll's statements to Agnew that were the same as the statements given to the SEC or the FBI and USAO in Atlanta in relation to Correll's investment dealings with Horizon Establishment. Id. at 121. According to Agnew, Correll's conversations and agreements with Midkiff as they related to Joshua Tree Group, West Wing Investments, and Central Financial Services sparked discussions of an indictment against him in Minnesota.[5] Id. at 121-23. Agnew stated that the decision to indict Correll was made after May 8, 2007, and until that point Correll was not a target of her investigation. Id. at 122, 124.

## 2. Motion for Disclosure of Grand Jury Transcripts

Defendant Correll requests disclosure of grand jury transcripts pursuant to Fed. R. Crim. P. 6(e)(3)(E). While grand jury records and transcripts are subject to a general rule of secrecy under Fed. R. Crim. P. 6(e)(2), there are exceptions under Rule 6(e)(3). However, a defendant must

---

[5] Agnew recollected that the earlier interviews also did not go into as much detail about the conversations between Correll and Midkiff. Id. at 123-24.

establish a "particularized need before the court will accede to...a release" of such materials. <u>United States v. Broyles</u>, 37 F.3d 1314, 1318 (8th Cir. 1994).  Defendant fails to provide the Court with any showing of particularized need that would authorize disclosure of grand jury transcripts.  Correll's motion to dismiss for vindictive prosecution lacks any basis in law or fact.  Thus, the Court finds no reason to disturb the secrecy of the grand jury record.

Moreover, the Court embraces its earlier holding as it directly correlates to this case when it states that:

> [The]...motion to dismiss is wholly unsupported by evidence to the extent it relies upon a contention that the superseding indictment is a result of the government's impure motives and the motion is entirely speculative with regard to the possible effects that the superseding indictment may have on the co-defendant's decision to testify favorably for Midkiff.  Indeed, the motion fully relies upon the court making assumptions and inferences based upon alternative hypothetical circumstances and conjectured outcomes." <u>See</u> Report & Recommendation 5 [Docket No. 81].

Based upon the foregoing findings and conclusions, the Magistrate Judge makes the following:

### RECOMMENDATION

The Court **hereby recommends** that Defendant Travis Correll's Motion to Dismiss the Second Superseding Indictment Based on Vindictive Prosecution [Docket No. 124] be **denied**.  The Court also recommends that Defendant's motion for discovery of grand jury transcripts and evidence pursuant to Fed. R. Crim. P. 6(e)(3)(E) be **denied.**

Dated:   November 19, 2007

        s/ Arthur J. Boylan
Arthur J. Boylan
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **November 29, 2007**.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.